UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                              :

**LEONARD KELLNER**,              :

                       :

              Plaintiff,        :

                       :  **MEMORANDUM DECISION AND**

          – against –          **ORDER**

                       :  21-CV-3990 (AMD) (ST)

**COUNTY OF NASSAU, PATRICK J. RYDER**, :
individually and in his official capacity, **NASSAU**
**COUNTY POLICE DEPARTMENT**,       :
**DARLENE H. LUFFMAN**, individually and in
her official capacity, and **MARK TIMPANO**,   :
individually and in his official capacity,            

                       :

              Defendants.      
---------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brings this action against the County of Nassau; the Nassau County Police

Department ("NCPD"); NCPD Detective Sergeant Darlene H. Luffman, individually and in her

official capacity; NCPD Lieutenant and commanding officer of the NCPD's Pistol License

Section ("PLS") Marc Timpano, individually and in his official capacity; and NCPD

Commissioner Patrick J. Ryder, individually and in his official capacity. (ECF No. 60 at 1.) He

brings claims under 42 U.S.C. §§ 1983, 1985, and 1988 for violations of the First, Second,

Fourth, and Fourteenth Amendments to the United States Constitution and for conspiracy to

prevent the return of his guns. (ECF No. 78-18 at 5; ECF No. 60 ¶¶ 29–43, 46–47.) He also

brings a state law conversion claim. (ECF No. 60 ¶¶ 44–45.) In addition, the plaintiff asks the

Court to hold the defendants in contempt for "their continued disregard of prior orders" directing

the defendants to hold post-deprivation hearings for the "seized and confiscated firearms." (ECF

No. 78-18 at 5.) Finally, the plaintiff asks the Court to appoint a Special Master to monitor

Nassau County's implementation of and compliance with a post-deprivation hearing process. (*Id.*)

Before the Court is the plaintiff's motion for summary judgment. As explained below, the Court grants summary judgment on the plaintiff's Fourteenth Amendment procedural due process claim and related *Monell* claim against Nassau County, dismisses the plaintiff's claims against the Nassau County Police Department, and denies the remainder of the plaintiff's motion.

**BACKGROUND**[1]

**I.      Surrender of Firearms and Suspension of the Pistol License**

       **a.      June 2017 Domestic Incident and Surrender of Firearms**

The plaintiff obtained a Nassau County pistol license in July 2010. (ECF No. 73 ¶ 30.) In 2017, the plaintiff and his then-wife, Maureen Allwright, were going through a contentious

---

[1] The factual background is based on the Court's review of the record, including the parties' briefs, the plaintiff's Rule 56.1 statement of fact, the defendants' Rule 56.1 counterstatement, and all supporting exhibits. (*See* ECF No. 72-1 (the plaintiff's Rule 56.1 Statement); ECF No. 73 (the defendants' Rule 56.1 Counterstatement); ECF No. 78-2 (the plaintiff's Rule 56.1 Statement submitted with his motion).) The Court specifically relies on the following exhibits: ECF No. 77-1 (June 13, 2017 NCPD Case Summary Report and property receipts (*see also* ECF Nos. 81-1, 81-2 (same))); ECF No. 79-2 at 107 (June 2017 NCPD Notice of Pistol License Suspension); ECF No. 79 (Luffman deposition transcript and exhibits); ECF No. 77-3 (temporary orders of protection); ECF No. 77-4 (Divorce Judgment and Stipulation of Settlement); ECF No. 79-1 (Todd deposition transcript and exhibits); ECF No. 77-6 (NCPD records of plaintiff's arrests); ECF No. 78-11 (Certificate of Disposition for May 17, 2019 arrest); ECF No. 78-12 (Certificate of Disposition for Nov. 10, 2019 arrest); ECF No. 79-2 (Timpano deposition transcript and exhibits); ECF No. 77-8 (July 22, 2022 NCPD Long Gun Review Report and Recommendation (*see also* ECF No. 81-6 (same))); ECF No. 78-15 (Aug. 1, 2022 NCPD Long Gun Review Notice of Final Determination (*see also* ECF No. 81-7 (same))); ECF No. 78-16 (Jan. 30, 2023 NCPD Notice of Pistol License Revocation (*see also* ECF No. 81-8 (same))); ECF No. 78-17 (plaintiff's counsel's communications with the defendants); ECF No. 79 at 159–208 (PLS Handbook Revised May 21, 2015); ECF No. 81-3 (PLS Handbook Revised June 10, 2016); ECF No. 79 at 106–158 (PLS Handbook Revised Sept. 12, 2018); ECF No. 81-4 (excerpts from Kellner deposition transcript); ECF No. 81-5 (NCPD Pistol License Section Kellner case file notes); ECF No. 82-1 (Feb. 6, 2023 Motion Hearing Transcript).

All citations incorporate the responses and objections of the opposing party. The plaintiff's 56.1 statements in connection with the pre-motion conference and the motion are substantially the same (*compare* ECF No. 72-1 *with* ECF No. 78-2); the Court relies on both. Although the defendants filed a Rule 56.1 counterstatement that included their responses to the plaintiff's 56.1 statement in connection with the pre-motion conference (*see* ECF No. 73), they did not file a counterstatement with their

2

divorce.  (*Id.* ¶ 21.)  Allwright served the plaintiff with divorce papers on June 13, 2017.  (*Id.* ¶ 21.)  The same day, the plaintiff came home and found that his guns were not in his safe.  (*Id.* ¶ 22.)  He learned that Allwright had removed his guns, as well as her own, without his permission.  (*Id.*)  He called the NCPD, and a uniformed officer from the 7th Precinct arrived at the house in response to a "domestic call."  (*Id.* ¶¶ 23, 42.)  The plaintiff "voluntarily surrendered" two handguns — a Glock model 19, 9 mm pistol (serial number PLD215) and an S&W model 42.380 caliber pistol (serial number ABBC377) — and three long guns — a Savage Arms model 220 20 gauge shotgun (serial number J133163), a Dark Storm Industries model DS-15 556 caliber rifle (serial number FX1599), and a Ruger model 10/22 .22 caliber rifle (serial number 111-59922) — to the NCPD for "safe keeping until the divorce proceedings concluded." (*Id.* ¶¶ 24–25.)[2]

b.       **Suspension of the Plaintiff's Pistol License**

A few days later, on June 19, 2017, the NCPD Pistol Licensing Section automatically suspended the plaintiff's pistol license without prior notice because of the domestic call at his home.  (*Id.* ¶¶ 27, 42, 48; *see also* ECF No. 81-5 at 5–6.)  Detective Luffman, one of the defendants, was the Pistol License Section investigator assigned to the plaintiff's case.  (ECF No. 73 ¶ 26; *see also* ECF No. 81-5 at 5 (June 14, 2017 case file entry noting "ASSIGNED TO #4 (LUFFMAN)").)  The record before the Court includes a letter "Notice of Pistol License

---

opposition to the motion for summary judgment.  The Court therefore relies on the defendants' 56.1 counterstatement in connection with the May 28, 2025 pre-motion conference.  Most citations are to ECF No. 73, the defendants' 56.1 counterstatement, as that document includes the plaintiff's statement of material facts, as well as the defendants' objections and counterstatement of facts.

[2] According to the NCPD report, the plaintiff surrendered three handguns: a Glock model 19 (serial number PLD215), a Smith & Wesson 38 caliber (serial number CSE7903), and a Glock model 25 (serial number ABBC377).  (*See* ECF No. 77-1 at 3–5.)  The parties agreed in their Rule 56.1 statement and counterstatement that the plaintiff surrendered only two handguns.  (ECF No. 73 ¶ 25.)

Suspension" addressed to the plaintiff (*see* ECF No. 79-2 at 107), which, according to Lieutenant Timpano, a defendant and the commanding officer of the Pistol License Section during the relevant time (ECF No. 73 ¶¶ 4, 49), would have been provided to the plaintiff — either by mail or in person, if he came to the office — on or about June 19, 2017, when the Pistol License Section amended the license (ECF No. 79-2 at 22–25 ("[T]he New York State amendment is generated on the same date that the suspension is printed out and mailed.").  The plaintiff says that he did not get notice of the suspension.  (ECF No. 73 ¶ 27.)

According to NCPD records, the Pistol License Section suspended the license under Chapter 1, Sections I(1) and (2) of the NCPD PLS Handbook (the "PLS Handbook").  (*See* ECF No. 77-8 at 1; ECF No. 79 at 130–34.)[3]  Section I of the PLS Handbook states:

> Pursuant to NYSPL § 400.00(11), a pistol license issued by the Nassau County Police Department may be revoked and cancelled by the Commissioner of Police *at any time.*  Furthermore, a person whose pistol license is suspended or revoked for any reason is required to surrender their license and firearms, *including their rifles and shotguns,* to the NCPD Pistol License Section.  In the event a license is downgraded, a licensee *must* comply with any and all rules and regulations applicable to their new pistol license status.

(ECF No. 81-3 at 22 (emphasis in original).)

The license suspension notice does not describe the basis for the suspension or an appeals process, but it instructs the recipient to "***refer all correspondence and phone inquiries to your investigator Police Officer LUFFMAN***," and that "[a]ll information regarding the Pistol License Section policies and procedures and can be referenced in the Pistol License Section Handbook

---

[3] There are three editions of the PLS Handbook in the record before the Court.  (*See* ECF No. 79 at 159–208 (PLS Handbook Revised May 21, 2015); ECF No. 81-3 (PLS Handbook Revised June 10, 2016); ECF No. 79 at 106–158 (PLS Handbook Revised Sept. 12, 2018).)

which can be obtained at www.pdcn.org." (ECF No. 79-2 at 107 (emphasis in original).)  The

"Right to Appeal Revocation or Downgrade" section of the PLS Handbook, in turn, provides:

> Upon receipt by a licensee of a revocation/downgrade letter from the Pistol License Section, the licensee MUST send a letter to the Pistol License Section *via certified mail within ten (10) days*, requesting an appeal of the revocation/downgrade.  The licensee will then receive instructions regarding the appeal process.  The licensee must follow these instructions in order to exercise his or her appeal.

(ECF No. 81-3 at 26.)  It is undisputed that the plaintiff did not appeal the suspension pursuant to

this process.  (ECF No. 73 ¶ 54.)

The plaintiff's and Allwright's relationship was acrimonious for some years.  In early

2019, the Family Court issued temporary orders of protection against, and on behalf of, the

plaintiff and his wife under the Family Court Act.  (*Id.* ¶ 31; *see also* ECF No. 77-3 at 2–5.)  The

protective orders provided that it was "a federal crime to buy, possess, or transfer a handgun,

rifle, shotgun or other firearm" while the order was in effect.  (ECF No. 77-3 at 3, 5.)  On May

17, 2019, Allwright reported that the plaintiff disconnected a security camera at her home, and he

was arrested for violating the order of protection in effect at the time.  (ECF No. 73 ¶ 34.)  Those

charges were dismissed on June 13, 2019.  (*Id.* ¶ 35.)  Allwright reported similar conduct on

November 10, 2019 — that the plaintiff unplugged a security camera at her house.  (*Id.* ¶ 36.)

The plaintiff was arrested, but the charges were dismissed on December 2, 2019.  (*Id.*)  The

protective order against the plaintiff expired on July 31, 2019, and the protective order against

Allwright expired on February 20, 2020.  (*Id.* ¶ 31.)  The plaintiff and Allwright finalized their

divorce on July 22, 2020.  (*Id.* ¶ 32.)

II.     **The Plaintiff's Attempts to Get His Long Guns Back and Reinstate His Pistol License**

a.      **The Plaintiff's Requests for Return and Reinstatement**

In October 2020, after his divorce became final in July 2020, the plaintiff went to the 7th Precinct and asked "members of the 7th Precinct" how he could get his guns back.  (*Id.* ¶ 37.) The defendants dispute this because they do not have it documented in the plaintiff's NCPD Pistol License Section case file.  (*Id.*; *see also* ECF No. 81-5 at 8.)  Their case file includes an earlier entry on August 17, 2020, which says that the plaintiff "called to inform [the Pistol License Section] that his divorce is finalized and he [and his] wife, licensee Maureen Allwright[,] will pursue reinstatement" of their pistol licenses; he was told to submit a "detailed letter of explanation including [a] request for reinstatement, divorce decree, [and a] notarized letter of no objection from Maureen Allwright."  (ECF No. 81-5 at 8.)  The plaintiff wrote to the NCPD 7th Precinct on December 9, 2020, requesting the return of his guns, but the NCPD did not respond.  (ECF No. 73 ¶ 38.)  The defendants dispute this, again based on the absence of an entry in the plaintiff's case file; they cite a December 10, 2020 entry that the plaintiff "called inquiring about reinstatement of his pistol license," "spoke to [Luffman] in August and she advised licensee what was needed," and that he "was advised to provide all proper paperwork that [Luffman] requested."  (*Id.*; *see also* ECF No. 81-5 at 8.)[4]

On February 22, 2021, the plaintiff's counsel wrote to the Pistol Licensing Section requesting the return of the plaintiff's long guns.  (ECF No. 73 ¶ 40; *see* ECF No. 78-17 at 4–5.) The defendants cite their case file entry for that date, which say that "licensee lawyer Daniel Hallock called inquiring about the letter he sent [the Pistol Licensing Section] — requesting

---

[4] Luffman's employee serial number was "8160."  (*See* ECF No. 81-5 at 5; ECF No. 79 at 16.)

6

licensee weapons returned. I told him we did not receive and to resend." (ECF No. 73 ¶ 40; *see also* ECF No. 81-5 at 8.) The case file reflects that the defendants received a letter from the plaintiff's attorney on March 1, 2021, had additional communications with him in the following weeks, and received the completed long arm review form from the plaintiff's attorney on March 9, 2021. (ECF No. 81-5 at 8–9.)

On March 2, 2021, Detective Luffman asked Allwright whether she was going to send a letter regarding the reinstatement of the plaintiff's pistol license. (*Id.* at 9.) Luffman also made "several attempts" to contact her about the letter through early April. (*Id.*) On April 5, 2021, Allwright called the NCPD; she said that writing the letter had "slipped her mind," and she would mail it the next day. (*Id.*) The defendants say, and NCPD records reflect, that on April 12, 2021, they received a notarized letter from Allwright in which she objected to reinstatement of the plaintiff's license. (ECF No. 73 ¶ 30; *see also* ECF No. 81-5 at 9.) The original letter is not in the record before the Court. According to the defendants' records, Allwright alleged that the plaintiff was repeatedly arrested for violating an order of protection, "consistently made threats and displayed unstable and erratic behavior towards he[r] and her sons," and twice installed a GPS tracking device on her car. (ECF No. 77-8 at 5–6.) She said that the plaintiff was "mentally unstable," and she thought he might "use his firearms with malicious intent against her or others he feels threatened by." (*Id.*)

In a PLS case file entry from April 12, 2021, the defendants' records appear to reflect that the initial "long gun review" was completed, and the "folder [was] copied and given to supervisors for review to submit to [the] Legal Bureau." (ECF No. 81-5 at 9–10.) The PLS "recommended that the [NCPD] retain possession of [the plaintiff's] long guns." (ECF No. 77-8 at 6.) The parties agree that under the County's review process, the investigator's

recommendation goes to the NCPD Pistol License Section supervisor for review, then to the legal department, which issues the findings and recommendations report, and finally to the commissioner for final action.  (ECF No. 73 ¶ 47.)

### b.    This Litigation

On July 14, 2021, the plaintiff filed this action against the County of Nassau, the NCPD, and Police Commissioner Patrick Ryder.  (ECF No 1.)[5]  At this point, the Pistol License Section still had not issued a decision on the plaintiff's long guns or on his pistol license.  At a June 30, 2022 settlement conference, Magistrate Judge Steven Tiscione ordered the defendants to issue a determination on the plaintiff's pistol license within thirty days "because the License Bureau has not issued a determination with respect to Plaintiff's pistol license despite having possession of the firearms for several years;" in addition, he ordered the defendants "to return the plaintiff's long guns immediately or immediately initiate proceedings to forfeit the long guns."  (*ECF Minute Entry dated July 5, 2022*.)  On July 13, 2022, Judge Tiscione denied the plaintiff's motion to reconsider the part of his order about forfeiture proceedings.  (*ECF Order dated July 13, 2022*.)  Citing *Razzano v. County of Nassau*, 765 F. Supp.2d 176 (E.D.N.Y. 2011), Judge Tiscione noted that "the appropriate remedy here is to order Nassau County to either return the firearms or provide Plaintiff with the process he is entitled to under the law."  (*Id.*)

### c.    Final Determinations and Related Process

#### i.  *Long Gun Review*

On July 22, 2022, over one year after the long gun review packet was "given to supervisors for review to submit to [the] Legal Bureau" (ECF No. 81-5 at 10), the NCPD Appeals Officer in the Legal Bureau issued his findings and recommendations on the plaintiff's

---

[5] The plaintiff also named ten John Doe officers, who were later dismissed.  (ECF No. 60 at 1.)

long guns.  (ECF No. 73 ¶ 52; *see* ECF No. 77-8.)[6]  On August 2, 2022, the plaintiff received a letter "Notice of Final Determination" about his long guns from NCPD Commissioner Ryder, which stated that: "(1) [his] firearms were appropriately surrendered to the Pistol License Section; and (2) the Pistol License [Section] appropriately retained possession of [his] longarms."  (ECF No. 73 ¶¶ 52–53; ECF No. 78-15 at 2.)  The Appeals Officer's findings and recommendations were enclosed with the letter.  (ECF No. 73. ¶¶ 52–53.)  The defendants conceded at a hearing that this letter was the first time the plaintiff was informed about the evidence on which the County was relying in its decision.  (ECF No. 82-1 at 12–13.)  The letter advised:

> [W]ithin one hundred twenty (120) days of your receipt of this Notice, a civil action seeking forfeiture of you[r] client's longarms will be commenced in accordance with Nassau County Administrative Code § 8-7.0.  You have the ability to arrange for the removal of your longarms by transferring ownership, selling the longarms to a licensed gun dealer, or requesting that the longarms be destroyed.  Please contact the Pistol License Section at (516) 573-7559 or the Property Bureau at (516) 573-7641 to arrange for appropriate action to be taken.

(ECF No. 78-15 at 2.)  The letter before the Court does not describe an appeal process (*see id.*), and the defendants conceded that there was no additional appeal process available, other than bringing a lawsuit (ECF No. 82-1 at 13–15 (The Court: "Is there any formal process for somebody to appeal this decision?"  Defense Counsel: "Only through the court.")).

---

[6] The defendants describe this as an "83-page long gun review," but the document before the Court is eight pages.  (*Contrast* ECF No. 73 ¶¶ 51, 56 *with* ECF Nos. 77-8, 81-6.)

ii.  *Pistol License Revocation*

In a January 30, 2023 letter, the defendants gave the plaintiff the following "Notice of

Pistol License Revocation" (ECF No. 73 ¶ 58; ECF No. 78-16 at 2–3)[7]:

> After a complete and thorough investigation by the Pistol License
> Section, it has been determined that sufficient evidence exists to
> warrant revocation of your pistol license pursuant to New York
> State Penal Law ("NYSPL") § 400.00 and the Nassau County
> Police Department Pistol License Section Handbook Chapter 1,
> Section I(1) and Section(I(2).  Specifically, the factors that
> contributed to this determination included:
>
> - History of [ ] multiple domestic related incidents
>   (more than 12)
>
> - History of arrest related to domestic incidents
>
> - History of violating order of protection
>
> - Lack of good moral character

(ECF No. 78-16 at 2.)  The notice also included instructions for filing an appeal:

> Please be further advised that you have the ability to appeal the
> revocation of your pistol license.  As prescribed in Chapter 1,
> Section I(5) of the Nassau County Police Department Pistol
> License Section Handbook, in order to initiate an appeal, you must
> send a letter to the Pistol License Section *via certified mail within
> ten (10) days* requesting an appeal.  Upon receipt of this letter, the
> Pistol License Section will provide you with the instructions
> regarding the appeal process.  You must follow these instructions
> in order to exercise your right to an appeal.

(*Id.* at 2–3.)  If the plaintiff did not appeal, or if his appeal was unsuccessful, he would have to

wait "a minimum of five (5) years from either the date of revocation or the appeal decision,

whichever is later, before reapplying for a pistol license." (*Id.* at 3.)  It is undisputed that the

plaintiff did not appeal the revocation pursuant to this process.  (ECF No. 73 ¶ 54.)

---

[7] The plaintiff says that this was the first communication he received from the defendants about his pistol
license.  (ECF No. 73 ¶ 58.)

*iii. Process*

According to the plaintiff, the NCPD Pistol License Section did not conduct any additional investigation after it suspended his pistol permit in June 2017.  (*Id.* ¶¶ 28–29, 42–46.)  In particular, he says the assigned investigator, Detective Luffman "did nothing," and "conducted no investigation nor requested information from [the] [p]laintiff with regards to [his] pistol permit suspension."  (*Id.* ¶¶ 28–29, 41–46.)  The plaintiff "was never afforded an opportunity to respond" to the charges against him, and the defendants never "sought nor requested information" from him before their final determinations.  (*Id.* ¶¶ 54–55.)  The defendants dispute this and rely on provisions in the PLS Handbook, to which the Notice of Pistol License Revocation, but not the Notice of Final Determination for the long gun review, referred.  (*Id.*; ECF No. 78-15; ECF No. 78-16 at 2–3.)  They also say that they "continued to receive investigation documents" and consider subsequent domestic incidents between the plaintiff and his wife, including "numerous domestic case reports setting forth in detail the manner in which plaintiff and his wife continued to perform hostile actions towards each other," "repeated telephone calls from plaintiff's wife reporting continued hostile actions by plaintiff against her, copies of court-ord[e]red temporary orders of protection for and against the plaintiff and his wife, and further acts of harassment by the plaintiff against his wife."  (ECF No. 73 ¶¶ 28–29, 42–46; *see also* ECF No. 81-5 at 5–10.)  They concede, however, that they did not speak to the plaintiff as part of their investigation, that there was no hearing before a neutral decisionmaker, and that their decisions were based almost exclusively on police reports and court records about domestic incidents, and on Allwright's version of events.  (*See* ECF 82-1 at 5–6 (Defense Counsel: "[T]he appeals officer issued his finding that due to the plaintiff's extensive history of domestic incidents with his ex-wife, including the issuance of an order of protection . . . the police department will continue to retain his long arms. . . ."  The Court: "At what point

11

in this process did [the plaintiff] have an opportunity to present his evidence, I guess to the hearing officer?"  Defense Counsel: "When he filed his appeal paperwork. . . . [The] defendants' position is that a physical, in-person hearing is not required."), 17 (The Court: "What if all of these allegations . . . turned out to be complete fabrications by the wife and he never gets an opportunity to even respond to them until after the decision has already been made?  I mean, I don't know in what universe that could be considered due process."  Defense Counsel: "Well, again, then we end up here in federal court.").)

The plaintiff also alleges that "Nassau County has a policy of automatically suspending a pistol license of holders involved in a domestic incident, regardless of the facts."  (ECF No. 73 ¶ 50.)  Though the defendants deny this (*see id.*), they also admit that the plaintiff's pistol license was automatically suspended without notice because there was a domestic call at his home on June 13, 2017 (*id.* ¶¶ 27, 42, 48).  Finally, the plaintiff says that that "Nassau County does not conduct post deprivation hearings with regards to confiscated long guns."  (*Id.* ¶ 51.)  The defendants, on the other hand, say that they conducted an "exhaustive investigation" into the plaintiff's long guns pursuant to the PLS Handbook, "as set forth in the 83-page July 22, 2022 report,"[8] and that the "plaintiff was provided with sufficient notice and opportunity to be heard in consonance with all constitutional due process protections."  (*Id.*)  The defendants continue to retain possession of the plaintiff's long guns and have refused to return them.  (*Id.* ¶ 59.)

### d.     The Plaintiff's Motion for Contempt

On November 28, 2022, before the defendants sent the Notice of Pistol License Revocation (ECF No. 78-16), the plaintiff moved to hold the defendants in contempt, because

---

[8] As explained above, the document before the Court is only eight pages long.  (*Contrast* ECF No. 73 ¶¶ 51, 56 *with* ECF Nos. 77-8, 81-6.)

they did not comply with Judge Tiscione's order "to either immediately return Plaintiff's long guns, for which no license is required, or immediately initiate proceedings to forfeit the long guns" (ECF Nos. 31–33). At a February 6, 2023 the hearing on the motion, the defendants conceded that the decision to revoke his pistol license and keep his long guns was based on Allwright's allegations and the arrests that were premised on her claims, and that they did not give the plaintiff notice of or the opportunity to respond to Allwright's claims. (ECF No. 82-1 at 5–7, 12–15.) The defendants also conceded that the process, to the extent there was any, was not prompt. (*Id.* at 16 (The Court: "I think, even putting aside the question of whether or not the hearing is sufficient to satisfy due process, I think you automatically are going to lose on the question of whether it's prompt because it wasn't." Defense Counsel: "I acknowledge that, your Honor.").) Judge Tiscione denied the motion for contempt, deferring the resolution of the due process issues to the resolution of a summary judgment motion. (*Id.* at 17–18.)

### e.     The Plaintiff's Motion For Summary Judgment

On July 11, 2025, the plaintiff moved for summary judgment on his claims. (ECF No. 78.) The defendants opposed on August 19, 2025 (ECF No. 81), and the plaintiff replied on August 28, 2025 (ECF No. 82).

## LEGAL STANDARD

Summary judgment is appropriate if the parties' submissions — including pleadings, deposition transcripts, affidavits, and other material in the record — show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law,'" and a factual dispute is "genuine" only if "'the evidence is such that a reasonable jury could return a verdict

13

for the nonmoving party.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant has the burden of demonstrating that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020) (citation omitted).

A court "may find for the moving party 'only if [it] conclude[s] that on the record presented, considered in the light most favorable to the non-moving party, no reasonable fact-finder could find in its favor.'" *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023) (citation modified) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 54–55 (2d Cir. 2005)); *see also Weinstein v Krumpter*, 386 F. Supp. 3d 220, 229 (E.D.N.Y. 2019) (citation omitted). A court does not consider whether "the evidence unmistakably favors one side or the other but whether a fair-minded fact-finder could return a verdict for the non-moving party on the evidence presented." *Roberts*, 68 F.4th at 88 (citation modified) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).

## DISCUSSION

The plaintiff brings claims under 42 U.S.C. §§ 1983, 1985, and 1988 for violations of the First, Second, Fourth, and Fourteenth Amendments, as well as conspiracy to prevent the return of his firearms and a state law conversion claim. (ECF No. 78-18 at 5; ECF No. 60.) The plaintiff moved for summary judgment on his Second, Fourth, and Fourteenth Amendment claims, and related *Monell* claims brought under Section 1983. (ECF No. 78 at 1.)[9]

---

[9] The plaintiff does not address the First Amendment claim, Section 1983 conspiracy claim, or state law conversion claim in his motion for summary judgment or memorandum of law in support of his motion. (*See* ECF Nos. 78, 78-18.) Accordingly, the Court does not address those claims here.

14

Section 1983 provides in relevant part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights," *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979), such as those in the Second or Fourteenth Amendments.  "Thus, to state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was 'committed by a person acting under the color of state law.'"  *Harrison v. New York*, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)) (citations omitted).

### I.    Claims against the NCPD

As an initial matter, the plaintiff moves to dismiss his claims against the NCPD, because it is a non-suable entity, under Federal Rule of Civil Procedure 41(a)(1)(A)(i).  (ECF No. 78-18 at 12–13.)  The defendants do not object.  (ECF No. 81 at 6.)  That motion is granted.

Federal Rule of Civil Procedure 41(a)(1)(A)(i) provides in relevant part that "the plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party . . . answer[s]" the complaint.  Under Rule 41, however, when an opposing party has answered the complaint, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(1)(A)(i), 41(a)(2).  While the Court agrees that the NCPD is, under New York law, "an administrative arm of the County of Nassau" that "do[es] not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued," *Rose v. Cnty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (citations omitted), because the NCPD has answered the complaint (ECF Nos. 60, 66), and

15

does not object to dismissal (ECF No. 81 at 6), the Court dismisses the action against the NCPD with prejudice under Rule 41(a)(2). *See Bynum v. Maplebear Inc.*, 209 F. Supp. 3d 528, 535 (E.D.N.Y. 2016) ("The grant or denial of a dismissal on motion under Rule 41(a)(2) is within the sound discretion of the trial court." (citation omitted)).

## II.    Default

The plaintiff argues that the Court should enter default judgment against the County on the theory that it has not answered the amended complaint. (ECF No. 78-18 at 13–14.) According to the defendants, Judge Tiscione already considered and denied this motion in 2024. (ECF No. 81 at 6–7; *see also* ECF No. 65; *ECF Order dated Nov. 26, 2024* (noting that "[i]t appears from the docket that Defendants have appeared and filed an answer").)

The plaintiff served the original complaint on the County on July 28, 2021, and counsel for the County appeared on August 13, 2021. (ECF Nos. 4, 9.) The plaintiff filed an amended complaint on October 4, 2024. (ECF No. 60). Under Federal Rule of Civil Procedure 15(a)(3), the County had fourteen days to file its answer. The plaintiff requested a certificate of default on November 25, 2024. (ECF No. 65.) Later that day, the defendants filed their answer. (ECF No. 66.) Judge Tiscione denied the plaintiff's motion on November 26, 2024, because the defendants "appeared and filed an answer." (*ECF Order dated Nov. 26, 2024.*) The plaintiff did not object to that decision, and the time for doing so has long passed. Fed. R. Civ. P. 72(a). Accordingly, the Court denies the plaintiff's request for default against the County.

## III.    Constitutional Claims

The plaintiff seeks summary judgment on his Second, Fourth, and Fourteenth Amendment challenges to the defendants' suspension and revocation of his pistol license, and the "seizure" and retention of his long guns. (ECF No. 78 at 1; ECF No. 78-18 at 5.)

### a.    Statutory Framework

New York Penal Law creates a licensing regime for the possession of handguns, pistols, revolvers, and other "firearms." *Juzumas v. Nassau Cnty., New York*, 33 F.4th 681, 683–84 (2d Cir. 2022) (citing N.Y. Penal Law §§ 265.00(3), 400.00). This regime makes it unlawful to possess a firearm and certain rifles and shotguns in New York without a license. N.Y. Penal Law. §§ 265.20(3), 400.00. Under state law, licenses are generally issued and administered by local governmental units or officers. *See Juzumas*, 33 F.4th at 684. In this case, Nassau County issued and administered the plaintiff's pistol license.

Eligibility for a license is governed by Penal Law § 400.00(1), which provides that "[n]o license shall be issued or renewed except for an applicant" who meets enumerated requirements, including that the applicant be "of good moral character . . . mean[ing] having the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others," Penal Law § 400.00(1)(b), and that he "has not had a license revoked or . . . is not under a suspension or ineligibility order issued pursuant to . . . [§ 842-a] of the [F]amily [C]ourt [A]ct," *id.* § 400.00(1)(k). Section 842-a of the Family Court Act provides for the suspension of a firearms license "upon the issuance of a temporary order of protection." N.Y. Fam. Ct. Act § 842-a(1).

In addition, Penal Law § 400.00(11)(a) provides that the licensing authority in Nassau County may revoke a firearms license "at any time." N.Y. Penal Law § 400.00(11)(a). If the Nassau County licensing officer revokes a license, notice "shall be issued in writing and shall include the basis for the determination, which shall be supported by a preponderance of the evidence, [and] information regarding the ability to appeal such decision . . . ." *Id.*

17

While a license is not required for all rifles and shotguns — also called "long guns" or "longarms" — Penal Law § 400.00(11)(c) provides that in "any instance in which a person's license is suspended or revoked under paragraph (a) or (b) of this subdivision, such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered to an appropriate law enforcement agency."[10] N.Y. Penal Law § 400.00(11)(c). The Second Circuit has held that "by the statute's express terms, when an individual's pistol license is suspended or revoked for any reason set forth in Penal Law § 400.00(11)(a) or (b)" — which includes as required by a temporary order of protection under Section 842-a of the Family Court Act — "the licensee must surrender his long guns" even if no license is required to possess them. *Juzumas*, 33 F.4th at 687.

**b.    Second Amendment Claim**

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. While the Second Amendment "codifie[s] a pre-existing" "individual right to possess and carry weapons," it does not permit people "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Dist. of Columbia v. Heller*, 554 U.S. 570, 592, 626 (2008) (emphasis and citations omitted).[11] "[T]he contours of [the right to bear arms] are as of yet underdeveloped and ill-defined." *Doutel v. City of Norwalk*, No. 11-CV-1164, 2013 WL 3353977, at *23 (D. Conn. July 3, 2013).

---

[10] During the course of this litigation, the state legislature has revised the statute to expand it to apply to certain rifles and shotguns, but the parties do not make any arguments about the revisions.

[11] The Second Amendment applies to the states via the Fourteenth Amendment. *See McDonald v. Cty. of Chicago, Ill.*, 561 U.S. 742, 750 (2010); *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 37 (2022).

"In *Bruen*, the Supreme Court set forth a two-step framework for determining whether a statute violates the Second Amendment." *United States v. Simmons*, 150 F.4th 126, 130 (2d Cir. 2025) (citing *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022); *Zherka v. Bondi*, 140 F.4th 68, 75–79 (2d Cir. 2025)).  First, courts "determine whether 'the Second Amendment's plain text covers an individual's conduct.'" *Id.* (quoting *Bruen*, 597 U.S. at 17).  If it does, "'the Constitution presumptively protects that conduct,'" and "the government must 'justify its regulation' by demonstrating that it is 'consistent with this Nation's historical tradition of firearm regulation.'" *Id.* (quoting *Bruen*, 597 U.S. at 17).  "To meet this burden, the government must 'identify a well-established and representative historical analogue' to the challenged regulation." *Id.* (quoting *Bruen*, 597 U.S. at 30 (emphases omitted)).  "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* (quoting *Bruen*, 597 U.S. at 17 (internal quotation marks omitted)); *see also United States v. Rahimi*, 602 U.S. 680, 690 (holding that because "our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms" "[s]ince the founding," if "an individual" who is subject to a restraining order is found to "pose[] a credible threat to the physical safety of an intimate partner . . . [he] may — consistent with the Second Amendment — be banned from possessing firearms while the order is in effect."); *Simmons*, 150 F.4th at 132 (upholding federal statute that disarms individuals who have been convicted of domestic violence misdemeanors) (citing *Rahimi*, 602 U.S. at 693–98, 700)).

The parties disagree about the scope of the plaintiff's Second Amendment claim.  Citing *Bruen*, the plaintiff argues that the defendants' suspension and revocation of his pistol license, as well as their retention of his long guns, violates the Second Amendment because "more [process]

19

is required when [d]efendants seek to restrict [the] [p]laintiff's Second Amendment right." (ECF No. 78-18 at 14–22). The defendants argue that the plaintiff "has not shown that his ability to lawfully obtain a pistol license in the future has been foreclosed, nor has he demonstrated that the administrative determinations regarding his long arms imposed any constitutional restriction beyond those permitted by statute." (ECF No. 81 at 7–12.)

Although the plaintiff cites *Bruen*, he does not address how controlling Second Amendment precedent — including *Bruen* and *Rahimi* — applies to the facts of this case. He does not discuss whether or how his own conduct fits within the *Bruen* analysis, nor does he address whether the defendants' retention of his long guns and revocation of his pistol license "is consistent with this Nation's historic tradition." *Cf. McGregor v. Suffolk Cnty.*, No. 23-CV-1130, 2025 WL 3704289, at \*3 (E.D.N.Y. Dec. 22, 2025) (analyzing analogous historical examples as required by *Bruen* and "find[ing] no genuine dispute of fact that the [challenged state law] comports with the United States' history of firearm regulation").[12, 13] Accordingly, because "[s]ummary judgment is appropriate only when 'the movant shows that . . . [he] is entitled to judgment as a matter of law,'" the Court denies summary judgment on the plaintiff's Second Amendment claim. *Coyle*, 954 F.3d at 148 (citation omitted); Fed. R. Civ. P. 56(a).

---

[12] Citing *Henry v. County of Nassau*, 6 F.4th 324 (2d Cir. 2021), the plaintiff argues that his Second Amendment rights were violated because Nassau County revoked his pistol license based on an expired order of protection. (ECF No. 78-18 at 15–16.) In *Henry*, the Second Circuit found that the plaintiff stated a claim for a Second Amendment violation, but relied on precedent that has since been abrogated by *Bruen*. 6 F.4th at 331–33 (applying *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81 (2d Cir. 2012), and reversing the district court's dismissal of the Second Amendment claim); *Antonyuk v. James*, 120 F.4th 941, 964 (2d Cir. 2024) ("Fourteen years after *Heller* and twelve years after *McDonald*, the Supreme Court decided *Bruen*, abrogating our circuit precedent, both the specific holding of *Kachalsky* and the general approach we took to Second Amendment claims."), *cert. denied*, 145 S. Ct. 1900 (2025).

[13] The plaintiff is not challenging the constitutionality of Penal Law § 400.00, nor would the County be the proper defendant for such a challenge. *See Juzumas*, 33 F.4th at 692.

c.        **Fourth Amendment Claim**

The plaintiff concedes that he "surrendered" his firearms to the NCPD, but argues that

the "force behind" his "loss of possession and ownership of his longarms was state action,"

which "requir[ed] that he divest himself of ownership and possession of his longarms because his

pistol license was revoked." (ECF No. 73 ¶ 24; ECF No. 78-18 at 6, 24–25.) According to the

defendants, the "undisputed record shows that [the] [p]laintiff voluntarily surrendered his

firearms to the Nassau County Police Department," so there was no "search" or "seizure" within

the meaning of the Fourth Amendment. (ECF No. 81 at 13.)

The Fourth Amendment guarantees "[t]he right of the people to be secure in their . . .

papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The

basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals

against arbitrary invasions by governmental officials." *Camara v. Mun. Ct. of City & Cnty. of

San Francisco*, 387 U.S. 523, 528 (1967). A seizure requires "some meaningful interference

with an individual's possessory interests in that property." *Soldal v. Cook Cty., Ill.*, 506 U.S. 56,

61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). The "paradigmatic

Fourth Amendment seizure contemplates a forcible dispossession of the owner of the items to be

seized," *Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 482 (S.D.N.Y. 2019) (citation

and internal quotation marks omitted), and more recent case law associates the right with a

person's "legitimate expectations of privacy," *Byrd v. United States*, 584 U.S. 395, 403–04

(2018) (citations omitted).

The case law in this circuit is clear that the voluntary surrender of firearms to law

enforcement does not constitute a "seizure" for purposes of the Fourth Amendment. *Milau v.

Suffolk Cnty.*, No. 17-CV-6061, 2025 WL 1029394, at *12 (E.D.N.Y. Feb. 13, 2025) (citing

21

*Kaminsky v. Schriro*, 760 F. App'x 69, 72 (2d Cir. 2019) (summary order); *Krumpter*, 386 F.

Supp. at 233), *report and recommendation adopted*, No. 17-CV-6061, 2025 WL 957533

(E.D.N.Y. Mar. 31, 2025); *see also id.* ("While the government may seize a person by a mere

'show of authority' so long as the person submits . . . the 'show of authority' doctrine does not

appear to have been extended to cover the seizure of personal effects." (citing *Juzumas*, 33 F.4th

at 692 and collecting cases)).  In this case, it is undisputed that the plaintiff contacted the NCPD

and voluntarily surrendered his firearms until his divorce was finalized.  (ECF No. 73 ¶¶ 22–

25.)[14]  Thus, "it is at best uncertain that the County 'seized' his longarms within the meaning of

the Fourth Amendment at all, much less unreasonably seized them" in violation of the Fourth

Amendment.  *Juzumas*, 33 F.4th at 692 (collecting cases); *see also Kaminsky*, 760 F. App'x at

72–73(summary order) (holding that a gun owner who surrendered his firearms to police officers

after being notified that, as a felon, he was prohibited from possessing them could not state a

Fourth Amendment claim when they were not returned).[15]  Accordingly, the Court denies the

plaintiff's motion for summary judgment on his Fourth Amendment claim.

> **d.    Fourteenth Amendment Due Process Claims**

Citing multiple cases in this district directing the defendants to provide due process in the

form of post-deprivation hearings, the plaintiff argues that the defendants denied him that

---

[14] The parties agree that the plaintiff wanted the NCPD to hold on to his guns "for safe keeping until the divorce proceedings concluded."  (ECF No. 73 ¶ 24.)  The defendants' records also reflect that the plaintiff "requested that [his] guns be held for safeguarding until the divorce proceedings were resolved."  (ECF No. 77-8 at 2.)

[15] This claim fails for the additional reason that "this aspect of the County's policy constituted a straightforward enforcement of Penal Law § 400.00(11), which requires a person to surrender his longarms when his pistol license is revoked for any of the reasons provided in § 400.00," including being the "subject of an order of protection," "ha[ving] a relevant Nassau County arrest history," and "domestic incidents [ ] occur[ing] since the time of the confiscation."  *Juzumas*, 33 F.4th at 690, 692. Accordingly, "[t]o the extent that the County was merely complying with a state directive that is not challenged here, the County is not the proper defendant to [the plaintiff's] Fourth Amendment claim." *Id.* at 692 (citing *Vives v. City of New York*, 524 F.3d 346, 352 (2d Cir. 2008)).

process in suspending and then revoking his pistol license, and in retaining his long guns.  (ECF No. 78-18 at 14–22.)  The defendants argue that they acted properly in suspending and revoking the plaintiff's license, because the plaintiff violated licensing requirements.  (ECF No. 81 at 7–10.)  They also maintain that they were justified in retaining his long guns, citing their long gun review process.  (*Id.* at 11–12.)  As for notice, the defendants say that they gave the plaintiff adequate notice and the opportunity to appeal the revocation of his pistol license, which he chose not to take.  (*Id.* at 7–10.)  The defendants also maintain that the NCPD provided the plaintiff with sufficient process related to the decision not to return his long guns, as well as an opportunity to appeal, which he did not pursue.  (*Id.* at 10–12.)

The Fourteenth Amendment provides that no "State deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  To determine the level of process due, "courts must look to the three-part test articulated by the Supreme Court in *Mathews v. Eldridge*."  *Krumpter*, 386 F. Supp. 3d at 235 (citing *Razzano*, 765 F. Supp. 2d at 185).  "Under the *Mathews* test, courts weigh: (1) the private interest affected by the state action; (2) the risk of erroneous deprivation through the procedures used and the value of additional procedural safeguards; and (3) the government's interest in taking the challenged action."  *Id.* (citing *Razzano*, 765 F. Supp. 2d at 185).

### i.   *Return of Long Guns*

The plaintiff claims that the defendants denied him due process under the Fourteenth Amendment because they took and retained his long guns without affording him a prompt post-deprivation hearing.[16]  (ECF No. 78-18 at 20–21.)  Courts in this district have held, and the Second Circuit has affirmed, that the NCPD's policy for the return of confiscated long guns

---

[16] The plaintiff does not assert that he was entitled to a pre-deprivation hearing.

provided inadequate post-deprivation process.  In *Razzano*, a gun owner challenged the legal process afforded to him after the police confiscated his long guns in the course of investigating alleged threatening conduct toward a legislator.  765 F. Supp. 2d at 184.  The Honorable Arthur Spatt, in a thoughtful and comprehensive opinion, found that "the pistol license hearing sets an improperly high standard for the return of longarms, and thus risks perpetuating an erroneous deprivation of property."  765 F. Supp. 2d at 188.  Applying the *Mathews* balancing test, Judge Spatt held that the County should provide a separate post-deprivation hearing to facilitate the return of long guns to gun owners.  *Id.* at 191.  In *Weinstein v. Krumpter*, Weinstein, whose long guns were confiscated during a domestic dispute, challenged the long gun review process.  386 F. Supp. 3d at 224.  Judge Spatt, in another instructive opinion, found that the procedure was "thorough" but lacked sufficient promptness; therefore, it "le[ft] room for a heightened risk of prolonged deprivation of undeserving owners of longarms" and required a prompt post-deprivation hearing.  *Id.* at 236–37; *see also Panzella v. Cty. of Nassau*, No. 13-CV-5640, 2015 WL 5607750, at *7 (E.D.N.Y. Aug. 26, 2015) (ordering a prompt post-deprivation hearing to determine whether to return long arms to the plaintiff, against whom there were expired temporary orders of protection pursuant to the Family Court Act), *aff'd in part, appeal dismissed in part sub nom. Panzella v. Sposato*, 863 F.3d 210 (2d Cir. 2017), *as amended* (July 18, 2017).

Judged by these standards, the County's determination to not return the plaintiff's long guns was unquestionably inadequate.  First, due process under the *Mathews* balancing test requires "a prompt post-deprivation hearing," "held before a neutral decisionmaker," where "Nassau County shall have the burden of showing that it is likely to succeed in court on a cause of action."  *Razzano*, 765 F. Supp. 2d at 191; *see also Panzella v. Sposato*, 863 F.3d 210, 219 (2d Cir. 2017) (upholding *Razzano*'s requirement of "a prompt post-deprivation hearing"), *as*

24

*amended* (July 18, 2017).  The Pistol Licensing Section had the plaintiff's completed long gun review form on March 9, 2021; by April 12, 2021, they also had Allwright's notarized letter objecting to returning the plaintiff's long guns.  (*See* ECF No. 81-5 at 9.)  At that point, the Pistol Licensing Section completed the long gun review packet and gave it "to supervisors for review to submit to [the] Legal Bureau."  (*Id.* at 10.)  The Appeals Officer in the Legal Bureau, apparently prompted by Judge Tiscione's order, issued his findings and recommendations on the long gun review on July 22, 2022 (ECF No. 73 ¶ 52; *see* ECF No. 77-8), more than five years after the defendants took the long guns.  It is undisputed that the plaintiff had no notice of the evidence against him, no opportunity to be heard on that evidence, and no opportunity to appeal the Commissioner's final determination on August 2, 2022, short of a lawsuit.  (ECF No. 82-1 at 13–15.)  This plainly does not satisfy *Razzano*'s requirement of a post-deprivation hearing before a neutral decisionmaker.  765 F. Supp. 2d at 191.

Nor can the defendants claim that the process was prompt.  "[A] timely process is required to satisfy constitutional muster."  *Krumpter*, 386 F. Supp. 3d at 237.  As the Second Circuit explained in *Panzella*, "a lengthy deprivation can be enough to violate the Fourteenth Amendment right to due process."  863 F.3d at 218 n.9 (citations omitted).  The County did not issue the findings or make the final determination on the plaintiff's long guns until August 2, 2022 (ECF No. 73 ¶ 53), and then only after Judge Tiscione ordered it.  At this point, five years had passed since the County took the guns, almost two years had passed since the plaintiff first asked about getting his long guns back, and more than a year had passed after the Pistol License Section completed the review packet — this was not a "timely process."  *Krumpter*, 386 F. Supp. 3d at 236–37 (finding a review time of "two to three months . . . not an unreasonable length of

25

time," but noting that many "longarms remaining confiscated after *four years*" (emphasis in original)).

Accordingly, the plaintiff's motion for summary judgment is granted with respect to his Fourteenth Amendment claim for the long gun retention and review.[17]

####        ii.   *Pistol License Suspension and Revocation*

The plaintiff argues that he "was not afforded due process" when the NCPD suspended and revoked his pistol license.  (ECF No. 78-18 at 14–16.)  The defendants argue that his license suspension and revocation were proper because the plaintiff repeatedly violated the licensing requirements of a licensee, including by failing to notify the Pistol Licensing Section of arrests, domestic incidents, and temporary protective orders, and because the plaintiff could have appealed, but did not.  (ECF No. 81 at 7–10.)

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process."  *Toussaint v. City of New York*, No. 17-CV-5576, 2018 WL 4288637, at *7 (E.D.N.Y. Sept. 7, 2018) (quoting *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012)).  The plaintiff cites *Bruen* for the proposition that "more [process] is required" when the defendants "seek to restrict [his] Second Amendment rights" (ECF No. 78-18 at 15–16), but, as discussed above with respect to his Second Amendment claim, the plaintiff does not explain how the *Bruen* framework applies to this case.

Additionally, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)

---

[17] The parties do not address the liability of the individual defendants in their submissions.  Accordingly, the Court does not decide whether the individual defendants are liable on this claim.

(citation omitted).  Courts in this circuit have declined to find a Fourteenth Amendment due process claim based on a pistol license determination.  *See, e.g.*, *Krumpter*, 386 F. Supp. 3d at 231–32 (finding the plaintiff's "due process claim regarding his handgun license and handguns does not state a claim" because "there is no protectible interest in a New York State-issued handgun license, which is subject to the broad discretion of the licensing official"); *Napolitano v. Ryder* No. 18-CV-3607, 2019 WL 365710, at *8 (E.D.N.Y. Jan. 30, 2019) ("Because there is no constitutional right to possess and retain some particular gun, such as a pistol," a citizen does not have a "specific constitutional right to a pistol license."); *Weinstein v. Ryder*, No. 19-CV-6236, 2021 WL 1108679, at *3 (E.D.N.Y. Mar. 23, 2021) (same) (citations omitted); *Moore v. City of New York*, No. 15-CV-6600, 2018 WL 3491286, at *22–23 (S.D.N.Y. July 20, 2018) (same); *Boss v. Kelly*, 306 F. App'x 649, 650 (2d Cir. 2009) (summary order) ("Under New York law, '[i]t is well settled that the possession of a handgun license is a privilege, not a right, which is subject to the broad discretion of the [licensing authority].'" (quoting *Papaioannou v. Kelly*, 14 A.D.3d 459, 460 (1st Dep't. 2005))); *cf. Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009) (finding the plaintiff had a property interest in her gun dealership license for her business because "the City did not have unfettered discretion" to revoke it).

The plaintiff does not address these cases, nor does he say whether *Bruen* has changed the rule.  "Without a protectible interest, the [p]laintiff cannot state a procedural due process claim." *Krumpter*, 386 F. Supp. at 235.  In these circumstances, the plaintiff has not shown that he "is entitled to judgment as a matter of law" related to the suspension and revocation of his license. *Coyle*, 954 F.3d at 148 (citation omitted).

Moreover, "[e]ven if [a] [p]laintiff had a property interest in holding such a firearms license, []he cannot assert that [his] right to procedural due process was violated if state law

27

provides an adequate remedy for the deprivation of that interest." *Trello v. McKeighan*, 624 F. Supp. 3d 150, 157 (N.D.N.Y. 2022) (quoting *El ex rel. Letite v. DeProspo*, No. 19-CV-8426, 2019 WL 6311882, *4 (S.D.N.Y. Nov. 22, 2019) (citations omitted)).  It is undisputed that the plaintiff did not appeal the suspension or revocation of his pistol license pursuant to the process outlined in the PLS Handbook (ECF No. 73 ¶ 54),[18] which the defendants argue should preclude his Fourteenth Amendment claim (ECF No. 81 at 9–10).  Furthermore, unlike a challenge to the County's long gun review process, "[c]ourts have held that a proceeding under Article 78 of the New York Civil Practice Law and Rules is an adequate remedy to challenge decisions with respect to firearms licenses." *Trello*, 624 F. Supp. 3d at 157 (citations omitted); *accord Negron v. Suffolk Cnty. Police Dep't*, No. 18-CV-5426, 2020 WL 3506061, *6 (E.D.N.Y. June 29, 2020) (citations omitted).  The plaintiff could have challenged his license revocation "as an arbitrary and capricious determination pursuant to N.Y. C.P.L.R. § 7803(3), which would have entitled him to a full hearing, and possibly a trial, before a New York State Supreme Court Justice with the power to annul" the determination. *Negron*, 2020 WL 3506061, at *6; *see also Trello*, 624 F. Supp. 3d at 157–58.  The plaintiff  did not do so.  This process would have provided "an adequate remedy" under state law. *Trello*, 624 F. Supp. 3d at 157 (citations omitted). Accordingly, the plaintiff "cannot assert that [his] right to procedural due process was violated if state law provides for the deprivation of that interest." *Id.*

Accordingly, the Court denies the motion for summary judgment on this aspect of the plaintiff's Fourteenth Amendment claim.

---

[18] While the parties dispute whether the plaintiff received the June 2017 Notice of Pistol License Suspension (*see* ECF No. 79-2 at 107; ECF No. 73 ¶ 27), it is undisputed that the plaintiff received the January 30, 2023 Notice of Pistol License Revocation (ECF No. 78-16; ECF No. 73 ¶ 58).

e.    *Monell* **Liability**

A municipality can be held liable when "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Serv. of Cty. of New York*, 436 U.S. 658, 691 (1978).  The plaintiff argues that his constitutional rights were violated pursuant to an official policy of Nassau County that does not fall within the scope of § 400.00(11).  (ECF No. 78-18 at 22–24.)  The defendant responds that it cannot be held liable under *Monell* because the Pistol License Section's determinations "were made pursuant to statutory authority and ordinary administrative review."  (ECF No. 81 at 12–13.)

As explained above, the Court denies summary judgment on the plaintiff's Second and Fourth Amendment claims, and his Fourteenth Amendment claim related to his pistol license. However, the plaintiff is entitled to summary judgment on his claim that the County denied him due process in connection with the refusal to return his long arms pursuant to an official policy. Indeed, the defendants have been on notice that that they are constitutionally required to provide a prompt post-deprivation hearing in this context since at least 2011, when Judge Spatt decided *Razzano*.  And the defendants concede that the long gun review process was conducted "pursuant to the Nassau County Pistol License [Section] Handbook" (ECF No. 73 ¶¶ 51–52, 54) — in other words, "pursuant to official municipal policy."  *Monell*, 436 U.S. at 691; *see also Razzano*, 765 F. Supp. at 183, 191 (noting "the defendants have essentially admitted that the actions they took with respect to [retaining the plaintiff's long guns] were the result of departmental policy" and granting summary judgment on the plaintiff's Fourteenth Amendment claim against the County); *Panzella*, 863 F.3d at 219 (upholding summary judgment for the plaintiff on her *Monell* claim against Nassau County for retaining her long guns without a prompt post-deprivation hearing).

29

Moreover, the County's attorney conceded before Judge Tiscione that Nassau County follows the procedure they used in the plaintiff's case in all cases. (ECF No. 82-1 at 17 (describing that the process followed in this case "[i]s the procedure. . . . For good or bad, that's the procedure.")  As noted above, counsel seemed to argue that filing this lawsuit was, in essence, the due process to which the plaintiff was entitled. (*Id.*)  This is wrong.  A "cumbersome" lawsuit that will inevitably cost the long gun owner "time" and "money" is not adequate process in this context.  *Panzella*, 863 F.3d at 214, 218 ("In light of the burdens an Article 78 proceeding places on the person whose longarms have been taken, we conclude there is a significant risk of erroneous deprivation of that person's interests in her longarms."); *Razzano*, 765 F. Supp. 2d at 188 (discussing Article 78 proceedings and noting that "placing the burden of going forward on the person whose [long guns] w[ere] taken is even more onerous, as it requires that such person give up not only time, but also money to initiate a lawsuit and retain an attorney").  This case was filed in 2021, which in and of itself illustrates the "cumbersome nature" of litigating these issues.  *Panzella*, 863 F.3d at 214.

In 2011, Judge Spatt found that "persons whose longarms are seized by Nassau County are entitled to a prompt post-deprivation hearing . . . before a neutral decision-maker." *Razzano*, 765 F. Supp. 2d at 190–91.  For at least fifteen years, the County has had the benefit of Judge Spatt's meticulous reasoning and the cases decided after *Razzano*, and has been on notice that it denies its constituents due process when it does not provide them with prompt, post-deprivation hearings.  Accordingly, the Court grants the plaintiff's motion for summary judgment on the plaintiff's Fourteenth Amendment *Monell* claim.

## IV.    Other Relief Requested

Finally, the plaintiff asks the Court to hold the defendants in contempt "for their continued disregard of prior orders from this Court directing Defendants to hold post-deprivation

hearings with regard to seized and confiscated firearms," and to appoint a Special Master "for the purposes of monitoring Defendant County of Nassau's implementation of a post-deprivation hearing process and then compliance therewith." (ECF No. 78-18 at 5.) The defendants argue that both requests for extraordinary equitable relief are unwarranted and should be denied. (ECF No. 81 at 3.) The parties do not elaborate beyond this in their submissions.

"The court must [ ] provide 'notice and opportunity to be heard before imposing *any* kind of sanctions.'" *United States Sec. & Exch. Comm'n v. Gottlieb*, No. 21-2516, 2023 WL 193628, at *1 (2d Cir. Jan. 17, 2023) (quoting *60 E. 80th St. Equities, Inc. v. Sapir* (*In re 60 E. 80th St. Equities, Inc.*), 218 F.3d 109, 117 (2d Cir. 2000)) (emphasis in original). Accordingly, the Court denies the requested relief without prejudice to renew.

## CONCLUSION

For these reasons, the Court grants the plaintiff's motion for summary judgment on his Fourteenth Amendment procedural due process claim and *Monell* claim related to the long gun retention and review, dismisses the plaintiff's claims against the Nassau County Police Department, and denies the remainder of the plaintiff's motion.

**SO ORDERED.**

s/Ann M. Donnelly
_____

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      March 31, 2026